UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TIMOTHY SCOTT SCHEBEL,

      Petitioner,

v.                      Case No: 2:13-cv-52-FtM-29MRM

SECRETARY, DOC and FLORIDA
ATTORNEY GENERAL,

      Respondents.

_____

## OPINION AND ORDER

### I.  Status

Petitioner Timothy Schebel (hereinafter "Petitioner" or "Defendant") filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 (Doc. #1, "Petition") challenging his judgment and conviction of robbery with a firearm entered in the Twentieth Judicial Circuit Court, Charlotte County, Florida. Petition at 1.  Petitioner was sentenced to a thirty-five year sentence as a habitual felony reoffender.  The Petition raises two grounds for relief.  First, Petitioner contends that trial counsel rendered ineffective assistance of counsel in violation of his Sixth Amendment rights by not conveying a plea offer from the State prosecutor.  Second, Petitioner contends that the trial court erred when it did not suppress the incriminating statements he made to law enforcement officials.

Respondent[1] filed a Response (Doc. #17, Response) opposing the Petition and attached supporting exhibits (Doc. #13, Exhs. 1-21) consisting of the record on direct appeal and postconviction pleadings. Respondent argues that Petitioner has not satisfied 28 U.S.C. § 2254(d) (1)-(2). Petitioner filed replies (Docs. #18, #20), which only address his first ground for relief. This matter is ripe for review.

## II.   Applicable § 2254 Law

### A.   Deferential Review Required By AEDPA

Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). Abdul-Kabir v. Quarterman, 550 U.S. 233, 246 (2007); Penry v. Johnson, 532 U.S. 782, 792 (2001). Consequently, post-AEDPA law governs this action. Abdul-Kabir, 550 U.S. at 246; Penry, 532 U.S. at 792; Davis v. Jones, 506 F.3d 1325, 1331, n.9 (11th Cir. 2007).

---

[1] Rule 2(a) of the Rules Governing Section 2254 Cases in United States District Courts provides that applicants in "present custody" seeking habeas relief should name "the state officer having custody of the applicant as respondent." The Supreme Court has made clear that there "is generally only one proper respondent to a given prisoner's habeas petition." Rumsfield v. Padilla, 542 U.S. 426, 435 (2004). This is "'the person with the ability to produce the prisoner's body before the habeas court.'" Id. at 435-436. In this case, the proper Respondent is the Secretary of the Florida Department of Corrections. The Florida Attorney General is dismissed from this action.

Under the deferential review standard, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Cullen v. Pinholster, 563 U.S. 170, 181 (2011). "This is a difficult to meet, and highly deferential standard for evaluating state-court rulings, which demands that the state-court decisions be given the benefit of the doubt." Id. (internal quotations and citations omitted). See also Harrington v. Richter, 562 U.S. 86, 102 (2011) (pointing out that "if [§ 2254(d)'s] standard is difficult to meet, that is because it was meant to be.").

Both the Eleventh Circuit and the Supreme Court broadly interpret what is meant by an "adjudication on the merits." Childers v. Floyd, 642 F.3d 953, 967-68 (11th Cir. 2011). Thus, a state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits that warrants deference by a federal court. Id.; see also Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008). Indeed, "unless

the state court clearly states that its decision was based solely on a state procedural rule [the Court] will presume that the state court has rendered an adjudication on the merits when the petitioner's claim 'is the same claim rejected' by the court." Childers v. Floyd, 642 F.3d at 969 (quoting Early v. Packer, 537 U.S. 3, 8 (2002)).

"A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme] Court." Thaler v. Haynes, 559 U.S. 43, 47 (2010); see also Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)) (recognizing "[c]learly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision). "A state court decision involves an unreasonable application of federal law when it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case, or when it unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Ponticelli v. Sec'y, Fla. Dep't of Corr., 690 F.3d 1271, 1291 (11th Cir. 2012) (internal quotations and citations omitted). The "unreasonable application" inquiry requires the Court to conduct the two-step analysis set forth in Harrington v. Richter, 562 U.S.

at 86.   First, the Court determines what arguments or theories support the state court decision; and second, the Court must determine whether "fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior" Supreme Court decision.   Id. (citations omitted).   Whether a court errs in determining facts "is even more deferential than under a clearly erroneous standard of review."   Stephens v. Hall, 407 F.3d 1195, 1201 (11th Cir. 2005).   The Court presumes the findings of fact to be correct, and petitioner bears the burden of rebutting the presumption by clear and convincing evidence.   28 U.S.C. § 2254(e)(1).

### B.   Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d).   Newland v. Hall, 527 F.3d 1162, 1183 (11th Cir. 2008).   Post-AEDPA, the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case.   Newland, 527 F.3d at 1184.   In Strickland, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that

"counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 688; see also Bobby Van Hook, 558 U.S. 4, 8 (2009); Cullen v. Pinholster, 131 S. Ct. at 1403 (2011).

States may "impose whatever specific rules . . . to ensure that criminal defendants are well represented," but "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." Bobby Van Hook, 558 U.S. at 9 (internal quotations and citations omitted).  It is petitioner who bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006).  A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny.  Id.  A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable

professional assistance." <u>Strickland</u>, 466 U.S. at 689.   An attorney is not ineffective for failing to raise or preserve a meritless issue.  <u>Ladd v. Jones</u>, 864 F.2d 108, 109-10 (11th Cir. 1989); <u>United States v. Winfield</u>, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"). "To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable.  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000) (quoting <u>Burger v. Kemp</u>, 483 U.S. 776, 794 (1987)).

### III.  Findings of Fact and Conclusions of Law

This Court has carefully reviewed the record and, for the reasons set forth below, concludes no evidentiary proceedings are required in this Court.  <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473-474 (2007).  Petitioner does not proffer any evidence that would require an evidentiary hearing, <u>Chandler v. McDonough</u>, 471 F.3d 1360 (11th Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in the record before the Court. <u>Schriro</u>, 550 U.S. at 474; <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003).

## IV. Analysis

### A. Ground One

In Ground One, Petitioner submits that "newly discovered evidence exists" to show that he was denied the effective assistance of counsel when his counsel failed to convey a plea offer. Petition at 5. Significantly, Petitioner states that he did not know that "a more lenient plea offer had been made" of ten years with no mandatory minimum term. Id. Petitioner claims that had his defense attorney told him about the plea offer, he would have accepted the plea. Id. Petitioner submits that "Lieutenant B[i]rge" had arranged a deal with the State to offer Petitioner a ten-year sentence with no minimum mandatory term. Id. Petitioner recalled rejecting guilty pleas in exchange for a thirty-year, habitual offender sentence, and a ten-year sentence that included a mandatory minimum term. Id. Petitioner maintains, however, that defense counsel never conveyed a ten-year sentence with no minimum mandatory term.

In Response, Respondent refers to the State court's evidentiary hearing transcript held after Petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 concerning the issue. Response at 16. According to the transcript, defense counsel testified during that hearing that Petitioner rejected all of the prosecutor's plea offers and had instead counter offered a lesser sentence, which the State

rejected.  Id.  The State prosecutor testified that he recalled no offer lower than the ten-year minimum mandatory and further explained that the State would not have accepted any counter offer due to Petitioner's use of a firearm during the crime.  Id. at 16-17.  The postconviction court credited defense counsel's testimony and denied Petitioner's Rule 3.850 motion on this claim.

The record confirms that Petitioner raised this claim in his Rule 3.850 motion.  Therefore, the claim is exhausted.  After holding an evidentiary hearing, the postconviction court denied Petitioner relief finding as follows:

> At the hearing, the Defendant offered testimony consistent with the allegations presented in his postconviction motion. According to Defendant, trial counsel . . . shared a number of plea offers with him prior to the trial.  Defendant indicated that the last plea offer conveyed to him came approximately one month before his trial, and called for a 10 year minimum mandatory sentence, which he rejected.  Defendant maintained that counsel never informed him of a lower offer than the 10 year minimum mandatory sentence.  Defendant also asserted that an additional offer was made by the State, the terms of which were not disclosed to Defendant, which trial counsel rejected without his consent.  According to Defendant, four months after he arrived at Taylor Correctional Institution, he was informed by Lt. Birge that the State had offered a 10 year prison sentence with no minimum mandatory term.  On cross-examination, the Defendant denied telling trial counsel that he would not accept a plea offer that called for more than 8 years in prison.

Lt. Larry Birge, of the Jackson County Sheriff's Department, testified telephonically. Lt. Birge acknowledged conferring with trial counsel and the State Attorney's Office with regard to arranging a plea offer in the instant case in consideration for Defendant providing information regarding a double homicide under investigation in Jackson County. While Lt. Birge [] indicated that he was aware that the State had tendered a ten year plea offer in the instant case, **he denied having any knowledge of whether the offer contemplated a minimum mandatory term.**

Trial Counsel . . . confirmed that the State had extended a minimum mandatory 10 year plea offer. [Counsel] indicated that, shortly before trial, [the] Assistant State Attorney conveyed an oral plea offer of 10 years in prison without a minimum mandatory term, which she characterized as roughly 8 years in prison. According to [counsel], Defendant reacted to this offer with a request that she make a counteroffer of 6 years in prison. [Counsel] maintained that the decision to make a counteroffer, rather than accept the State's offer of 8 years in prison, was made by the Defendant. According to [counsel], when she returned to [the Assistant State Attorney] with a request for a lesser sentence, he indicated that the case was going to trial.

[The] Assistant State Attorney testified that, while he and trial counsel discussed removing the minimum mandatory term, he did not recall presenting trial counsel with an offer below a 10 year minimum mandatory sentence. According to Mr. Mason, the minimum mandatory term was not negotiable because the instant case involved a firearm, and because Defendant's scoresheet (copy attached) called for a minimum sentence of 129.75 months, or roughly 10 years in prison. [The Assistant State Attorney] maintained that Defendant rejected all the plea offers that were presented in this case.

> Having considered the testimony presented at
> the hearing, the Court finds that the
> Defendant has failed to present credible
> evidence indicating that trial counsel failed
> to convey a plea offer in this case.
> Defendant's contention that he was not aware
> of any offer less than a 10 year minimum
> mandatory sentence until he arrived at prison
> as contradicted by both trial counsel, and Lt.
> Birge, the latter of whom denied having any
> knowledge of whether the plea offer presented
> by the State contemplated a minimum mandatory
> term.  While [the] Assistant State Attorney .
> . . could not recall offering anything less
> than a 10 year minimum mandatory sentence,
> trial counsel offered convincing testimony
> indicating that an offer of roughly 8 years,
> or 10 years without a minimum mandatory term,
> was presented by the State, conveyed by trial
> counsel, and ultimately rejected by Defendant
> by virtue of his insistence on a counter offer
> seeking less time in prison.

Exh. 13 (emphasis added).  In his reply, Petitioner faults the postconviction court for not analyzing the "prejudice" prong of Strickland.  Reply at 5.

Initially, contrary to Petitioner's argument, there is no need for a court deciding an ineffective assistance of counsel claim to address both components of the Strickland inquiry, e.g., deficient performance and prejudice, if the defendant makes an insufficient showing on one of the elements.  Borden v. Allen, 646 F.3d 785, 818 (11th Cir. 2011) (citing Strickland, 466 U.S. at 690-91).  Here, the State court's denial was not contrary to nor an unreasonable application of Strickland.  Nor did the decision

rely on an unreasonable application of the facts in light of the evidence presented.

The facts developed during the postconviction court's Rule 3.850 evidentiary hearing reasonably supported its decision. See generally Exh. 12. Petitioner's argument in Ground One was premised on information allegedly conveyed by Lieutenant Birge concerning a plea offer that would have involved no minimum mandatory term. During the postconviction court's evidentiary hearing, Lieutenant Birge testified under oath that he recalled discussions with Petitioner concerning the State's plea offer, but did not recall whether the ten-year plea deal included a minimum mandatory term, or not. Defense counsel testified that she conveyed all plea offers to Petitioner. This testimony coupled with the Assistant State Attorney's testimony led the postconviction court to deny Petitioner relief. While it is true that a defense counsel's failure to convey a plea to a defendant could amount to deficient performance under Strickland, see Missouri v. Frye, ___ U.S. ____, 132 S. Ct. 1399, 1409 (2012), the facts developed during the postconviction court's evidentiary hearing do not support the conclusion that counsel failed to convey any plea offer to Petitioner. Consequently, Petitioner is denied relief on Ground One.

**B. Ground Two**

In Ground Two, Petitioner argues that the trial court erred in failing to suppress his confession. Petition at 11. Petitioner submits that his incriminating statements were provided to law enforcement officials in violation of his Miranda[2] rights. Id. Petitioner, however, acknowledges that he was read his Miranda rights. See id. at 15 ("[T]he tape began with Officer Ayers and Officer King giving Petitioner his Miranda rights. After receiving his Miranda rights, Petitioner agreed to speak to the officer regarding the alleged armed robbery."); Id. at 20 ("After the tape recorder was turned on, Officer King read Petitioner his Miranda rights, and Petitioner apparently orally waived his right to counsel and his right to remain silent in spite of having already invoked these rights [concerning the unrelated sexual battery charge] on prior occasions."). In pertinent part, Petitioner argues that police were prevented from questioning him about the drugstore robbery for which he was convicted in the present case because he had invoked his right to remain silent and right to counsel in an unrelated sexual battery case.

In Response, Respondent notes a distinction between the Sixth Amendment right to counsel and the Fifth Amendment right against self-incrimination. Response at 18. Under the Sixth Amendment,

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

Respondent argues that being held and formally charged with one crime does not prevent questioning about other uncharged crimes. Id.   Citing to McNeil v. Wisconsin, 501 U.S. 171, 176 (1991), Respondent argues that "[t]he right to counsel under the Sixth Amendment 'cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings – whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." Id. at 19.   Respondent notes, however, by contrast that Miranda's Fifth Amendment right to counsel, applies to all further custodial interrogation, but does not exist in perpetuity.   Id. at 19-20.   Respondent analogizes Petitioner's case to Michigan v. Mosley, 423 U.S. 96 (1975) and submits that law enforcement "scrupulously honored" Petitioner's Miranda rights in this case.   Id. at 21.

Respondent refers the Court to the record that shows police initially arrested Petitioner for an unrelated sexual battery charge approximately fifteen days before he had contact with police about the robbery charges.   Id. at 22 (citing Exh. 21, R. 206). Petitioner had asserted both his right to counsel and to remain silent in connection with the sexual battery charge.   Id. (citing Exh. 21, R. 295, 339).   When police called Petitioner for questioning on the drugstore robbery, Petitioner immediately invoked his right to remain silent, but did not invoke his right

to counsel.  _Id._ (Exh. 21, R. 206, 259).  Police honored his
invocation and ceased all questioning.  _Id._  Having concluded the
investigation into the drugstore robbery, police arrested
Petitioner for the drugstore robbery.  _Id._ at 23.  Respondent
explains that police did not question Petitioner at this time.
_Id._  Instead, Petitioner contemporaneously made voluntary
statements to the police, in which he confessed to the drugstore
robbery.  _Id._

A review of the record reveals that Petitioner exhausted
Ground Two.  Petitioner, with the assistance of counsel, argued
on direct appeal that the trial court erred in denying his motion
to suppress his pretrial statements made during police
interrogations.  Exh. 4.  The appellate court _per curiam_ affirmed
Petitioner's conviction.  Exh. 5.

The Fifth Amendment of the United States Constitution
provides that "[n]o person . . . shall be compelled in any criminal
case to be a witness against himself."  U.S. Const. Amend. V.  The
United States Supreme Court in _Miranda v. Arizona_ considered the
scope of this Fifth Amendment guarantee against self-
incrimination.  _Miranda_, 384 U.S. 436 (1966).  In _Miranda_, the
Court held that before a suspect, in custody, can be interrogated,
the suspect must be informed of his right to remain silent, that
what he says can be used against him, and the right to have an
attorney during interrogation, or if he cannot afford an attorney,

the right to have one appointed. Id. at 478-479. It is clearly established federal law that a state cannot introduce a suspect's testimony provided in the absence of an attorney without first showing that the suspect made a voluntary, knowing, and intelligent waiver of his Miranda rights. Hart v. Attorney Gen. for Fla., 323 F.3d 884, 891 (11th Cir. 2003).

A two-prong test is required to determine whether a waiver was voluntary, knowing, and intelligent: First, the relinquishment of the right must have been voluntary in the sense that it was the product of free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court conclude that the Miranda rights have been waived. Moran v. Burbine, 465 U.S. 412, 421 (1986) (quoting Fare v. Michael C., 442 U.S. 707, 725 (1979)). Courts look at four factors, none of which are independently dispositive, to determine whether a statement is voluntary: (1) whether the Miranda warning was given; (2) "'[t]he temporal proximity of the arrest and the confession'"; (3) "'the presence of intervening factors'"; (4) "'the purpose and flagrancy of the official

misconduct.'" <u>Lawhorn v. Allen</u>, 519 F.3d 1272, 1291 (11th Cir. 2008).

To determine "knowing" and "intelligent" waiver of <u>Miranda</u> rights, the courts focus on the suspects' comprehension of their rights. <u>Blanco v. Singletary</u>, 943 F.2d 1477, 1509-1510 (11th Cir. 1991) (citing <u>Mincey v. Arizona</u>, 437 U.S. 385 (1978)). "'If a defendant cannot understand the nature of his rights, he cannot waive them intelligently.'" <u>Miller v. Dugger</u>, 838 F.2d 1530, 1539 (11th Cir. 1988). If a defendant unambiguously requests for counsel, or to remain silent, police must cease interrogation. <u>Berghuis</u>, 130 S. Ct. at 2259-61; <u>Davis v. United States</u>, 512 U.S. 452, 459 (1994) (concluding if an accused makes a statement concerning the right to counsel "that is ambiguous or equivocal" or makes no statement, then police are not required to end the interrogation).

During the hearing on the motion to suppress, the trial court denied Petitioner's motion to suppress finding as follows:

> I'm denying your motion to suppress the statement on the tape made on March 24th, 2006, which you've identified and confirmed on the record as the only statement that you wish to suppress.
>
> I find that he – while he may have had the right to counsel and did, in fact, have counsel for his sexual battery, domestic violence case, that the right to counsel has nothing to do with what occurred on March 24th.

We've already heard that the officers came in on the 23rd, had a face to face with Mr. Schebel on that date, made certain statements, let him know basically what is up.  It was stipulated and totally agreed by everybody involved here that he made no statements whatsoever on the 23rd.

When he wanted to go back to his cell, he was allowed to go back to his cell, you know. Everything—that was the end of it.

We can agree and I do find that the evidence shows that on the 24th, the officers went to the jail only with the intention of arresting him for the CVS robbery.  That was their intention.  That the evidence is clear that Mr. Schebel is the one who initiated conversations regarding his involvement in that robbery after the officers had made clear, simply advised him what the evidence was against him. Simply making statements of fact is not coercion.

I find completely without  merit your argument that he was somehow coerced by virtue of having seen Mr. Deaton in the same physical area.  Your argument that he was—that Mr. Deaton was brought there is not supported by any evidence which was brought into this courtroom here today at all. The evidence was that Mr. Deaton was arrested on an old misdemeanor warrant that was served in the process of executing the search warrant on the 23rd.

So, frankly, I find it concerning that you would make an argument that he was brought there when there's no one shred of evidence brought in this courtroom that would suggest that he was brought there.  He was just standing there.

And there's no evidence whatsoever to suggest that in the minds of the officers that they somehow knew or should have intuited that Mr. Deaton was of poor health, that there was a 25-year relationship, that Mr. Schebel had

been his caregiver.  These men did not know
that. There's no testimony whatsoever that Mr.
Schebel said, oh, by the way, this man's got
cancer, he is ill, he's got emphysema, he's on
disability and I use to be his caregiver.
There's no evidence of that at all.

There's only Mr. Schebel's subjective
conclusion somehow that if he says something,
it's going to help his friend, Mr. Deaton, and
yet, there's nothing, nothing in this record
whatsoever to suggest that these detectives
tied Mr. Deaton's presence to the CVS deal.

The evidence is that under the totality of the
circumstances, once presented with the facts
and the evidence that the detectives had
compiled against Mr. Schebel, he wanted to get
Ms. Doyla Lane, or whatever her name is,
implicated.  And listening to the tape, it's
clear that the warnings, as required under
Miranda, were read to Mr. Schebel, and Mr.
Schebel has clearly stated that he's aware of
these kind of warnings because he's been
involved in this system on more than one
occasion, that he can think of in at least 10
to 15 occasions on which he's heard these
rights read to him before.

We know that he, in his sexual battery case,
made a decision to have a lawyer appointed to
his case and to remain silent on that case. He
knows how to invoke those rights, and he did
so when Detective Davis came and allegedly
tried to talk to him about his sexual battery
matter.

We know that on the 23rd he knew how to not
talk when spoken to so as not to get himself
involved in a situation.  When the detectives
came to talk to him on the 23rd, he wanted to
go back to his cell and he, in fact, was
allowed to go back to his cell.

So when they get there on the 24th and advise
him that he's now being charged with the CVS
robbery, and here's the evidence against you,
then he starts chattering about what occurred

with Ms. Lane. He's then read his Miranda
warnings, and on tape audibly waived his right
to have counsel and waived his right to not
talk unless he wanted to talk.

And the word—while the word, promise, does
appear in the tape, it's very close to the end
of the tape, which occurs at 9:16 p.m.  Only
that, you know, to the effect that if there is
evidence that Doyla Lane was involved in this
murder [sic], she'll be picked up.

However, the bulk of – there's no evidence
that that promise is made prior to the tape
being initiated.  The testimony here is that
there were no promises made or inducements or
get him to speak on the tape, and the lion's
share, the entire bulk of the statement is
made prior to the word, promise, appearing.

The rights were waived.  The question came,
do you understand them.  Yes.  And then a
second question, a second affirmation, do you
wish to speak to me. Uh, yeah.  And then off
they go to discussing the facts of the CVS
robbery.

So I do find that your statement made by our
client on tape which you'd like to suppress
was knowingly, voluntarily and intelligently
made and those were waived . . . . .

Exh. 21 at 350-355.  The trial court's denial of defense counsel's

motion to suppress is supported by the record.

Based upon an independent review of the record and considering

the totality of the circumstances, the Court finds Ground Two is

without merit.  Here, the trial court's decision was neither

contrary to, nor involved an unreasonable application of clearly

established federal law.  Further, the trial court did not apply

an unreasonable determination of facts in light of the evidence

presented in the State court proceeding.  Based on the foregoing, the Court denies relief as to Ground Two on the merits.

ACCORDINGLY, it is hereby

**ORDERED**:

1.  The Florida Attorney General is **DISMISSED** as a named Respondent.

2.  The Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED.**

3.  The Clerk of Court shall terminate any pending motions, enter judgment accordingly, and close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability on either petition.  A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1); Harbison v. Bell, 556 U.S. 180, 184 (2009). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) or, that "the

issues presented were adequate to deserve encouragement to proceed further", <u>Miller-El  v.  Cockrell</u>, 537 U.S. 322, 335-36 (2003)(citations omitted).  Petitioner has not made the requisite showing in these circumstances.  Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

  **DONE** and **ORDERED** in Fort Myers, Florida on this   11th   day of February, 2016.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: ftmp-1
Copies: All Parties of Record